408 F.2d 1184
 UNITED STATES of America, Appellee,
v.
Nathan WECHSLER, Appellant.
UNITED STATES of America, Appellee,
v.
Robert C. COTTEN, Jr., Appellant.
UNITED STATES of America, Appellee,
v.
Sigmund GOLDBLATT, Appellant.
UNITED STATES of America, Appellee,
v.
A. Claiborne LEIGH, Appellant.
 No. 11331.
 No. 11352.
 No. 11355.
 No. 11356.
 United States Court of Appeals Fourth Circuit.
 April 8, 1969.
 Certiorari Denied June 23, 1969.
 See 89 S.Ct. 2130, 2131, 2150.
 
 Before HAYNSWORTH, Chief Judge, and WINTER and CRAVEN, Circuit Judges.
 ORDER
 PER CURIAM:
 
 
 1
 A divided panel of this court affirmed the convictions of these defendants under 18 U.S.C. §§ 371, 1952, on February 5, 1968, 392 F.2d 344. On March 7, 1968, the court denied a petition for rehearing en banc by a vote of five to one, with one judge abstaining. Subsequently, the original panel unanimously affirmed denial of a motion for a new trial lodged in the district court, 406 F.2d 1032. Recently the same panel authorized the filing of a second petition for rehearing based upon the decision of the United States Supreme Court in United States v. Nardello, 393 U.S. 286, 89 S.Ct. 534, 21 L.Ed.2d 487 (Jan. 13, 1969). In response to our invitation, the appellants and the United States have submitted briefs and we have carefully considered them. After consultation with non-panel members of the court, we now reject the second petition for rehearing.
 
 
 2
 We do not read Nardello as undercutting our prior decision. The issue that divided us before was that of the duration of bribery admittedly prohibited by the State of Virginia — whether it extended to that point in time at which the zoning corruption was accomplished. We thought that it did despite language in the Virginia cases that the crime of bribery is complete when the bribe is paid.[1] Doubtless in Virginia an indictment need not charge that the briber got his quid pro quo, but it does not follow that the Supreme Court of Appeals of Virginia would adopt the same language in construing its statute if the payment and receipt of the money were beyond the jurisdiction. We think it not at all clear that if these corrupt zoning officials had received their bribes in the District of Columbia, for example, that their subsequent activity in Virginia to procure rezoning would be beyond the reach of Virginia's bribery statute.
 
 
 3
 Nardello,[2] supra, displays, we think, some degree of impatience with fine lines, careful distinctions and labels. It rejects the contention that "peculiar versions of state terminology are controlling," and looks at the elements of state crime generically. The question is said to be "whether the particular state involved prohibits the extortionate activity charged." We do not doubt that Virginia does. It is made plain that the term "extortion" as used in the Travel Act was not intended to track closely the legal understanding under state law. It is enough that the corrupt activity of the appellants in procuring rezoning was illegal under Virginia law.
 
 The petition for rehearing is
 
 4
 Denied.
 
 
 
 Notes:
 
 
 [1]
 We noted that Cotten's bribe was deposited in his account two days after enactment of the Travel Act. 392 F.2d 344, 347
 
 
 [2]
 The Supreme Court noted probable jurisdiction inNardello on June 17, 1968, the same date on which it denied certiorari in this case.
 
 
 WINTER, Circuit Judge (dissenting):
 
 5
 In dissenting from the affirmance of the judgments of conviction, I was of the view that 18 U.S.C.A. § 1952 was inapplicable because the state crime of bribery had been completed before the use of facilities in interstate, commerce to accomplish an unlawful state purpose was made illegal it followed, so I thought, that the majority's view gave unconstitutional retrospective effect to the federal statute and tortured the meaning of the federal statute by holding illegal the use of facilities in interstate commerce unaccompanied by any intent to violate state law. United States v. Wechsler, 392 F.2d 344, 349-354 (4 Cir. 1968).
 
 
 6
 United States v. Nardello, 393 U.S. 286, 89 S.Ct. 534, 21 L.Ed.2d 487 (1969), only confirms my view. It is replete with references to the concept that the federal act was intended to aid state law enforcement authorities in the enforcement of state law. In performing this supplementary purpose, the federal act cannot apply where state law is inapplicable. Where the state crime is complete, subsequent use of interstate facilities is not made illegal under federal law.
 
 
 7
 To avoid the plain thrust of Nardello, the majority significantly shifts the basis of its prior decision. In speaking originally, the majority said:
 
 
 8
 "We have no doubt that when the money passed, if not before, the state law of bribery had been violated and that appellants could then have been indicted in the state courts; in that sense their crime was complete. But their crime was not yet completed. * * * The manifest purpose of the statute is to deny the use of facilities in interstate commerce to those who would effect a wrong on the people by corrupting public officials. The wrong was not done to the people until the rezoning was accomplished and the accomplishment of that wrong, after the use of a facility in interstate commerce, is one of the activities at which the statute is aimed. Thus, the federal crime continued until the re-zoning was accomplished on July 25, 1962." 392 F.2d 346-347 (emphasis in original).
 
 
 9
 Now the majority seeks to explain its prior holding by the statement:
 
 
 10
 "The issue that divided us before was that of the duration of bribery admittedly prohibited by the State of Virginia — whether it extended to that point in time at which the zoning corruption was accomplished. We thought it did despite the language in the Virginia cases that the crime of bribery is complete when the bribe is paid. Doubtless in Virginia an indictment need not charge that the briber got his quid pro quo, but it does not follow that the Supreme Court of Appeals of Virginia would adopt the same language in construing its statute if the payment and receipt of the money were beyond the jurisdiction. We think it not at all clear that if these corrupt zoning officials had received their bribes in the District of Columbia, for example, that their subsequent activity in Virginia to procure rezoning would be beyond the reach of Virginia's bribery statute." (footnote eliminated.)
 
 
 11
 That initially the majority purported to rely on federal law even though it now claims that it relied on state law, and that its opinions are thus mutually contradictory are manifest.
 
 
 12
 Two other comments are in order. First, for its initial statement the majority relied heavily on an authority which no longer exists. See, present opinion in United States v. Wingo, 394 F.2d 484 (6 Cir. 1968). Second, in its latest expression, the majority need not speculate what the Supreme Court of Appeals of Virginia may hold with regard to corrupt public officials who receive bribes outside of the state of Virginia and then return. In such instances, the Virginia statutes make the promise, offer or gift of a bribe, as well as acceptance of the bribe, a criminal act, without more. 4 Code of Virginia (1960 Repl. Vol.) §§ 18.1-278; 18.1-279. The holding should be clear. This is no indication, however, that Virginia would treat as proscribed conduct acts occurring after payment of the bribe. To the contrary, Ford v. Commonwealth, 177 Va. 889, 15 S.E.2d 50, 52 (1941), tells us "[i]t [the statute] prohibits three specific acts — the giving of a bribe, the offer of a bribe and the promise of a bribe, any one of which is a complete crime in itself." Certainly, there is no warrant for concluding that the Virginia law extended to the rezoning, so as to carry with it the federal law, as to these defendants.
 
 
 13
 For the reasons I originally stated and on the authority of Nardello, I dissent from the denial of the petition for rehearing.